# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

LAMONT THOMAS, #350588

    Plaintiff

    v.     \*    CIVIL ACTION NO. PX-17-339

FRANK BISHOP, WARDEN, NBCI,
KRISTA BILAK, P.A.[1]
ALI YAHYA, M.D.
WEXFORD HEALTH SOURCES, INC.

    Defendants

## MEMORANDUM OPINION

Lamont Thomas, presently confined at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, files this civil rights action under 42 U.S.C. § 1983 against Frank Bishop, Warden of North Branch Correctional Institution (NCBI), contractual medical provider Wexford Health Sources, Inc. ("Wexford"), and Krista Bilak and Ali Yahya, employees of Wexford. Thomas seeks injunctive relief and alleges that Defendants are acting with deliberate indifference in violation of the Eighth Amendment by failing to treat adequately his fungal infection, swollen knuckles, and back pain. ECF No. 1.

Defendant Wexford moves to dismiss the claims, arguing that it is not subject to suit under § 1983. Medical Defendants Bilak and Yahya move to dismiss for lack of subject matter jurisdiction and, alternatively, for summary judgment on the merits of Thomas' claims. ECF No. 8. Warden Bishop moves for dismissal or summary judgment as to him, asserting that he is not responsible for Thomas' medical care. ECF No. 15. Thomas opposes the dispositive motions (ECF No. 17), and seeks reconsideration of the court's prior decision to deny his motion for

---

[1] The Clerk shall amend the docket to reflect the full and proper spelling of Defendants' names.

appointment of counsel. ECF No. 17, ECF No. 21. After review of the papers filed, the Court finds a hearing on the pending matters unnecessary. *See* Local Rule 105.6 (D. Md. 2016). As set forth herein, Defendants' dispositive motions are GRANTED and Thomas's motion for reconsideration of appointment of counsel is DENIED.

I.  **Defendants' Motions**

   **A. Standard of Review**

Because matters outside the pleadings are presented in Defendants' dispositive motions, they are considered motions for summary judgment. Fed. R. Civ. P. 12(d). Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Tthis does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The Court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The Court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and

defenses from proceeding to trial." *Bouchat,* 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**B.     Background**

Thomas' medical records show the following:  On June 30, 2016, Thomas submitted a sick call request complaining of lower back pain for two days and difficulty turning over in his bunk.  Thomas noted the problem recurred "at least (3) times a month" and was not helped with Motrin.  ECF No. 8-2, p. 3.[2]     Registered Nurse Amy Booth examined Thomas on July 3, 2016, noted that he was moving slowly, but could get "up and down from exam table with ease," and referred him to a medical care provider. *Id.*, p. 6.

On August 2, 2016, Registered Nurse Practitioner Krista Bilak examined Thomas.  Thomas at that visit complained of muscle spasms which began over a month ago after he was injured playing basketball.  Bilak noted the cause of his back pain to be the spasms and prescribed a muscle relaxant and an NSAID (nonsteroidal anti-inflammatory drug) for 30 days.  Bilak also prescribed back exercises and told Thomas to follow up with medical in a month. *Id.,* pp. 8-9.

On August 18, 2016, Thomas wrote a sick call request complaining of a cracked toenail and dry, peeling skin on his feet. *Id.,* p. 4.  On August 21, 2016, Registered Nurse Tammy Buser noted Thomas's toenails were cracked and appeared to be infected with fungus.  Thomas was given antifungal cream. *Id.,* pp. 10-11.

On August 23, 2016, Thomas submitted a sick call request complaining that he had patches of hair that were not growing after a visit to the barbershop in early August, which he

---

[2] This Memorandum Opinion cites to pagination found in the Court's electronic docket.

believed was caused because the clippers were used on other prisoners with "skin conditions." *Id.,* p. 5. On August 25, 2016, Thomas was seen by Registered Nurse Marilyn Evans, who noted that he walked with a steady gate but that his left toenail was dark, crusted and falling off. *Id.,* pp. 12-13. Thomas was told to apply a topical antifungal ointment daily, to keep his feet clean and dry, and to wear shower shoes. *Id.* Thomas also was seen by Registered Nurse Practitioner Holly Pierce on August 29, 2016, who examined him and noted only his severe, thickened toenails. *Id.,* pp. 14-15. Pierce prescribed two additional antifungal medications and ordered lab tests (a complete metabolic panel). *Id.,* p. 15. On September 1, 2016, Bilak saw Nurse Thomas for a follow up appointment. Bilak noted that Thomas' "back pain has been resolved," and that no further treatment was necessary. *Id.,* pp. 16-17.

On September 21, 2016, after punching a fellow prisoner in the head, Thomas presented to the prison medical department with swelling on the top of his right hand, and he complained of aching, throbbing pain. *Id.*, p. 18. Nurse Pierce prescribed Ibuprofen and Tylenol with codeine to alleviate his pain, and told Thomas to check his fingertips occasionally to ensure that they were normal in color. Pierce further instructed Thomas to contact the medical department immediately if his fingers showed any signs of discoloration (graying or turning blue). Pierce ordered also ordered an x-ray; the x-ray showed no evidence of acute fracture, dislocation or subluxation, with normal alignment. *Id.,* p. 44.

On September 23, 2016, Thomas requested more pain medication for his hand and back. Registered Nurse Dawn Hawk noted Thomas was already on pain medications and that he was able to turn and bend at his waist without difficulty, despite the fact that his hands were cuffed behind his back. *Id*., p. 20. Thomas continued to request more pain medication at a follow-up visit on October 1, 2016, when he received the news that his hand x-ray showed perfect

4

alignment with no evidence of fracture or malformation. *Id.,* p. 22. Hawk found mild swelling to Thomas's third and fourth fingers. She also noted Thomas' gait to be normal. Hawk denied Thomas' request for pain medications, specifically Tylenol with codeine. *Id.*

Thomas's requests for Tylenol with codeine continued, even though Thomas' had Naproxen and Ibuprofen at his disposal. *Id.,* p. 24. On October 12, 2016, Thomas told Hawk that he was experiencing back pain again and wanted pain medication because it had helped him previously. *Id.,* p. 25. Hawk emailed a provider about renewing Baclofen and noted that Naproxen was still available to Thomas through December 2016. *Id.*

On October 22, 2016, Thomas complained of pain in his back and right hand and the fungal infection in his toe which he believed had not improved. *Id.,* p. 28. Registered Nurse Evans examined Thomas and found no numbness or tingling in his back, that the radial pulse in his hand was strong, and that Thomas had no symptoms of acute distress. She saw that Thomas's right hand still had some slight swelling, and she recommended that he apply a warm compress to the hand three times each day. *Id*. Ms. Evans then referred Plaintiff to a provider regarding his toe, and recommended back exercises. *Id*.

On December 13, 2016, Thomas reported a hearing a "pop" while doing back exercises. Registered Nurse Jessica Cummings examined Thomas and found no spasms, noted that his sensation was intact, he had normal range of motion, and he felt neither tingling nor numbness. *Id.*, p. 30. She also examined Thomas' right arm which appeared normal, and that Thomas was not experiencing any tingling, numbness or sensory impairment. Cummings advised Thomas to use a muscle rub that was given to him from the pharmacy, to apply heat for his pain, and to continue taking his medications as ordered. Cummings also advised Thomas that he should not do any back exercise that caused him pain. *Id.* p. 31.

5

At Thomas's next medical visit on December 23, 2016, he did not voice any concerns regarding back pain, but five days later, on December 28, 2016, complained of back and arm pain to Registered Nurse William Beeman. *Id.,* pp. 33, 35. At that visit, he reported the severity of his pain to be a "9" on a scale of 1 to 10, ten being most severe. Yet Thomas also told Beeman that he had no difficulty walking up and down stairs or performing routine daily activities. Physical examination showed normal back strength and sensation. *Id.,* p. 35.

Two days later, on December 30, 2016, Bilak examined Thomas, who reported he felt a popping sensation in his right shoulder in mid-December while during push-ups. *Id.,* p. 38. Bilak prescribed an oral prednisone taper. *Id*. Registered Nurse Rose examined Thomas for a medication refill on January 7, 2017, and noted that Thomas's back strength and sensation were within normal limits. *Id*., p. 40. Physical therapy began on February 23, 2017, with Therapist Stephen Ryan. *Id.*. p. 43. Based on Thomas' medical visits while incarcerated, he filed suit claiming constitutionally inadequate medical care.

**C.    Analysis**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment, *Gregg v. Georgia*, 428 U.S. 153, 173 (1976), and "[s]crutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003), citing *Wilson v. Seiter*, 501 U.S.294, 297 (1991). Denial of adequate medical care can rise to the level of an Eighth Amendment claim where the plaintiff demonstrates that defendants' acts or omissions were undertaken with deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v.*

*Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999). This is so because claims of constitutional dimensions involve "deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences." Deliberate indifference to a serious medical need requires proof that, objectively, the plaintiff was suffering from a serious medical condition and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide the care or ensure such care was available for Plaintiff. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

While Plaintiff's medical condition must be serious, *see Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (no expectation that prisoners will be provided with unqualified access to health care), proof of an objectively serious medical condition does not end the Court's inquiry. The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer* 511 U.S. at 844.

If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted. *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000),

7

citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

### 1. Warden Bishop

Bishop argues principally that he cannot be subject to suit for denial of constitutionally adequate medical care because he is not responsible for providing such care, Wexford is. Thomas baldly responds that Bishop is responsible for medical care, and also argues that the "claims by the medical department are not being backed by documentation," and that he has been denied "access to the documents needed to successfully argue this injunction." *Id.,* p. 2. The Court agrees that, as pleaded, Thomas' claims as to Bishop must fail.

Thomas challenges the adequacy of his medical care by bringing suit pursuant to 42 U.S.C. § 1983. Liability is imposed under this statute to "any person who shall subject, or cause to be subjected, any person . . . to the deprivation of any rights...." 42 U.S.C. § 1983. Liability of supervisory officials as state actors "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001), citing *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984). A plaintiff may establish supervisory liability under § 1983 by showing: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction

and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994).

Thomas' complaint does not allege that Bishop was in any manner personally involved in his medical care, or that Bishop knew or should have known that Thomas was receiving inadequate care. Nor do the medical records reflect that Bishop had any involvement, directly or indirectly, in Thomas' medical care. Without more, Bishop cannot be held liabile under § 1983 for Thomas's alleged substandard medical care.

**2. Defendants Wexford, Bilak and Yahya**

As pleaded Wexford, a private corporation, cannot be held liable under § 1983 for actions allegedly committed by its employees *solely* upon a theory of respondeat superior. *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.,* 678 F.2d 504, 506 (4th Cir. 1982); *Clark v. Maryland Dep't of Public Safety and Correctional Services,* 316 Fed. Appx. 279, 282 (4th Cir. 2009). This is not to say that Wexford may *never* be held liable if, in its systematic provision of medical services, it is found to be a state actor. *Cf. Lugar v. Edmonson Oil Co, Inc.*, 457 U.S. 922, 941 ("Private persons, jointly engaged with state officials in the prohibited action, are acting under color of law . . . . To act under color of law does not require that an accused be an officer of the State. It is enough that he is a willful participant in joint activity with the state or its agents.") (internal quotation marks and citation omitted). However, that determination cannot be made on this record.

Alternatively, Thomas' medical records are not meaningfully challenged by Thomas, and when viewed most favorably to him, demonstrate that he received constitutionally adequate medical care. Thomas had attended routine medical appointments with properly qualified staff who performed medically appropriate examinations, diagnostic testing, and follow-up. The staff,

furthermore, was responsive to Thomas' changing medical needs and overall, Thomas' conditions appeared to improve under their care. On this record, no reasonable trier of fact could find that Defendants delivered medical care which violated Thomas' Eighth Amendment right to be free from cruel and unusual punishment.

Thomas' main bone of contention with his providers amounts to a disagreement over whether he should have received painkillers. But "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3rd Cir. 1970)). No exceptional circumstances exist here.

At best, Thomas has asserted claims sounding in negligence; that is the Defendants' provision of medical services fell below the standard of care acceptable in the medical profession, which cannot be brought as a § 1983 action. *See Daniels v. Williams,* 474 U.S. 327 (1986). To the extent Thomas asks to invoke this Court's supplemental jurisdiction over state common law medical negligence claims, this Court declines to exercise that jurisdiction. 28 U.S.C. § 1367(c)(3). *See also Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).[3] Summary judgment as to the remaining Defendants is hereby granted.

## II. Plaintiff's Motion for Reconsideration

Thomas seeks counsel on grounds that the medical records are falsified and "are not being backed up by documentation." ECF No. 17, p. 2. He makes this claim based only on some vague reference to "prison staff" who stated to him that Defendant Bilak had been fired for "negligence and dereliction" of duties. ECF No. 21. The court retains broad discretion to

---

[3] It also bears noting that any medical negligence claim must first be filed before the Maryland Health Claims Arbitration Board as a condition precedent to filing suit in court. See Md. Code Ann., Cts & Jud. Proc. §3-2A-04 et seq. *See Attorney General v. Johnson*, 385 A.2d 57 (Md. 1978). Thomas does not aver that he has satisfied this prerequisite.

appoint counsel under 28 U.S.C. § 1915(e)(1) where plaintiff presents "exceptional circumstances" justifying the appointment. *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. Dist. Ct*., 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel). Thomas has articulated his claims well, and has been given all relevant and available medical records. Bilak's alleged firing, standing alone, does not provide any meaningful evidence suggesting the records are not authentic or otherwise unreliable. Further, because this Court had granted summary judgment on all claims, Plaintiff's motion for reconsideration is moot.

**Conclusion**

When viewing the evidence in the light most favorable to Thomas, he cannot sustain a claim for a violation of his Eighth Amendment rights based on inadequate medical care. Defendants' Motions for Summary Judgment are granted. A separate order follows.

January 23, 2018                                             /S/
                                                    Paula Xinis
                                                    United States District Judge